UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

James Matheson,

    Plaintiff,

    v.                                  Case No. 1:05cv593

USF Holland Inc.,                  Judge Michael R. Barrett

    Defendant.

**OPINION & ORDER**

This matter is before the Court upon Defendant USF Holland Inc.'s Motion for Summary Judgment (Doc. 11), Plaintiff James Matheson's Memorandum in Opposition thereto (Doc. 15) and Defendant's Reply (Doc. 19). Also before the Court is Defendant's Motion to Strike (Doc. 20), Plaintiff's Memorandum in Opposition thereto (Doc. 21) and Defendant's Reply (Doc. 26).

**I.    FACTUAL BACKGROUND**

In 1988, Defendant hired Plaintiff to work as a truck driver. (Doc. 25, James Matheson Depo. at 42) Defendant provides less-than-truckload delivery services. (Doc. 11, Ex. 1, Tom West Aff. ¶ 1) At all relevant times, Plaintiff has been a member of Teamsters Local Union No. 100. (Matheson Depo. at 43)

In 1998, Plaintiff began to use most of his FMLA leave each year. (Id. at 32) In 2002 and 2003, it was necessary for Plaintiff to take FMLA leave to help care for his daughter. (Id. at 31) Plaintiff used all his available personal, vacation, and FMLA leave in both of these years. (Id. at 34) In his deposition, Plaintiff stated that his FMLA leave requests were always approved. (Id. at 123) However, Plaintiff claims that members of Defendant's

management retaliated against him for taking leave. Plaintiff claims that Kerry Klinger, Defendant's Regional Manager, told Plaintiff on several occasions that he would fire Plaintiff if he could, and that Plaintiff would never see his pension. (Id. at 108, 109) Plaintiff also claims that in June of 2005, Tom West, Defendant's Labor Manager, began to criticize Plaintiff's work and make him jump through extra hoops to get his absences counted as FMLA leave. (Id. at 103, 104)

On January 21, 2004, Plaintiff injured his knee at work. (West Aff. ¶ 1) Plaintiff applied for, and received workers compensation benefits for this injury. (Id.) Plaintiff claims that in retaliation, David Botos, Defendant's Terminal Manager at the time, began to assign older trucks to Plaintiff. (Doc. 15-3, Matheson Aff. ¶ 7) On March 5, 2004, Plaintiff went to the dispatch office to discuss the problem with Misty Carroll, the clerk responsible for assigning vehicles. (Matheson Depo. at 69) Plaintiff and Carroll yelled and cussed at one another. (Id. at 73) Plaintiff then clocked out for the day. (Id. at 76) Carroll reported that Plaintiff degraded her, referred to her as ignorant, and told her that she was a nobody because she was not in management. (West Aff., Ex. 1) Defendant terminated Plaintiff for engaging in sexual harassment. (Matheson Depo. at 83) Plaintiff grieved his termination. (Id. at 81) An agreement was reached whereby Plaintiff's termination was converted to a three-day suspension, with back pay for the days he missed. (Id. at 51)

On September 14, 2004, Plaintiff was standing in the terminal yard with several other employees. (Id. at 92) One of the employees yelled over to supervisor to ask him if he could write, after the supervisor replied that he could "even spell," the employee yelled back, "then spell cocksucker." (Id. 92, 96; Ex. 7) The supervisor blamed Plaintiff, and Defendant sought a disciplinary hearing. (Id., Ex. 7) Plaintiff denied that he made the comment. (Id.

at 96) Defendant issued Plaintiff a warning letter. (Matheson Aff., Ex. H) In his deposition, Plaintiff admitted that he knew who made the statement, but chose to not disclose this information to Defendant. (Matheson Depo. at 97)

On December 20, 2004, Defendant brought formal disciplinary proceedings against Plaintiff based on his attendance record. (Matheson Depo. at 101) Plaintiff explains that Defendant stated that the had fifteen instances of tardiness or absence in a one-year period, but claims that Defendant had previously overlooked such conduct. (Id. at 103) Plaintiff was suspended for one day. (Matheson Aff., Ex. 1)

In April of 2005, Plaintiff was suspended for three days. (Matheson Depo. at 116-17) The suspension was based on three incidents. First, on January 25, 2005, Plaintiff was involved in an accident with another driver while driving one of Defendant's trucks. (Id. at 110) Defendant's Safety Department determined that the accident was preventable. (West Aff. ¶ 11) Plaintiff claims that other employees have only received warning letters for single accidents which Defendant has categorized as preventable. Next, on February 28, 2005, Plaintiff strained his back while at work. (Id. 111) Defendant's workers compensation department contacted Plaintiff regarding the injury. Plaintiff claims that the investigator accused him of faking his injury. (Id. at 112) The investigator reported that Plaintiff was rude and insubordinate on the phone. (West Aff. ¶ 11)[1] Specifically, the investigator reported that Plaintiff ended the conversation by saying "you're a real bitch." (West Aff., Ex.

---

[1] Plaintiff claims that Sean Rice, Defendant's Dock Supervisor, overheard the telephone conversation between Plaintiff and the investigator. Plaintiff claims that Rice told Plaintiff and Andrew Serraino, another driver, that it was the investigator who was yelling. Plaintiff claims that Rice refused to make a written statement because he feared retaliation from Defendant. Plaintiff has presented Rice's statements in the affidavit of Serraino which is the subject of Defendant's Motion to Strike, discussed below.

2) Plaintiff claims that in the past, Defendant would only issue a warning letter for such behavior. Finally, Plaintiff had an unauthorized absence. (Matheson Depo. at 115) Plaintiff acknowledges that he was not on FMLA leave at the time, and he did not have a doctor's note excusing his absence. (Id.)

Plaintiff grieved this three-day suspension. (Id. at 117) On the grievance form, Plaintiff stated that "because of my Union involvement I am being held at a different standard [sic] than the other employees." (Id., Ex. 11) The grievance proceeded to the state grievance level, and the hearing panel ruled in favor of Defendant. (Id. at 119; West Aff. ¶ 10)

After filing this action, Plaintiff was terminated based on a failure to disclose certain medical conditions and medications on a questionnaire for his Department of Transportation questionnaire. (Matheson Aff. ¶ 37) Plaintiff grieved his termination, but his termination was upheld at the state hearing panel level. (Id. ¶ 41)

In his Complaint, Plaintiff brings three claims against Defendant: (1) retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(2); (2) retaliation for filing a workers compensation claim in violation of Ohio Rev. Code § 4121.90; and (3) intentional infliction of emotional harm.

## II. ANALYSIS

### A. Motion to Strike

Defendant agues that Plaintiff's Memorandum of Law opposing its Motion for Summary Judgment relies on inadmissible evidence in order to create an issue of fact for trial. Defendant argues that (1) Plaintiff's affidavit contradicts his prior deposition testimony; (2) Plaintiff relies on hearsay evidence; and (3) the Affidavits of Mark Miller and Clifford

Patterson and their accompanying exhibits are based on documents not produced to Defendant during the course of discovery, despite the fact that the documents are responsive to proper discovery requests. Defendant also argues that this Court should also strike any reference to Plaintiff's termination. Defendant argues that Plaintiff had the opportunity to amend his Complaint to include allegations relating to his termination, but instead raises the issue for the first time in his opposition to Defendant's Motion for Summary Judgment.

### 1.  Plaintiff's affidavit

It is well-settled that a party who has been examined at length at deposition cannot create a genuine issue of material fact by later submitting an affidavit that contradicts previously sworn testimony. *Penny v. United Parcel Serv.*, 128 F.3d 408, 416 (6th Cir.1997); *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir.1986). Defendant argues that the following statements in Plaintiff's affidavit contradict his earlier deposition testimony: (1) that management opposed his taking "so much time off;" (2) that Defendant's Regional Manager and Labor Manager opposed his taking time off; (3) that Plaintiff began to take FMLA leave in 2002 and 2003; (4) that his workers compensation claim injury occurred on January 21, 2004 when he injured his knee; (5) that he was assigned older trucks due to a workers compensation injury; and (6) that the one-day suspension he received for attendance problems was improper.

While affidavits containing mere conclusions have no probative value, *see In re Arnold*, 76 B.R. 109, 110 (Bkrtcy. S.D.Ohio 1987), *citing*, *Benton-Volvo-Metairie, Inc. v. Volvo Southwest, Inc.*, 479 F.2d 135, 139 (5th Cir.1973) *and Gordon v. Terry*, 684 F.2d 736, 744 (11th Cir.1982), this is not a basis upon which to exclude an affidavit. The Court finds

that Plaintiff's statements regarding management's opposition to taking time off are conclusions and do not necessarily contradict his deposition testimony. Therefore, the Court will not strike these statements.

Plaintiff does not appear to contest that he began to use FMLA leave before 2002, and the Court notes that Plaintiff did testify that he began to use FMLA leave in 1998. (Matheson Depo. at 35) Therefore, Plaintiff's statement in his affidavit will be stricken to the extent that it implicates that Plaintiff used FMLA leave for the first time in 2002.

The Court will not strike Plaintiff's reference to his January 21, 2004 injury. While Plaintiff's Complaint fails to mention this injury, the affidavit of Tom West, Defendant's current Labor Manager, notes that Defendant has a record of Plaintiff filing a worker's compensation claim for January 21, 2004 injury.

Plaintiff argues that his affidavit statement that he was not assigned older trucks due to a workers compensation injury does not conflict with his deposition testimony that he was assigned the older trucks because he was not "one of the guys." The Court finds that the two statements are not contradictory because both reasons could be the basis for Plaintiff being assigned older trucks. Therefore, the statements will not be stricken. However, the Court finds that these statements have limited probative value due to their conclusory nature. *See* Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.")

Finally, the Court finds that Plaintiff's affidavit statement regarding his one-day suspension does not conflict with his deposition testimony. Plaintiff does not dispute his absence, but instead argues that he should not have been suspended because other

employees had worse absenteeism records. Therefore, this statement will not be stricken.

### 2. Hearsay evidence

In general, hearsay may not be used to support a motion for summary judgment. *Farra v. General Motors Corp.*, 163 F.Supp.2d 894, 903 (S.D.Ohio 2001), *quoting*, *Jacklyn v. Schering Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999) ("Hearsay evidence may not be considered on summary judgment."). Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).

Defendant argues that the affidavit of Andrew Serraino contains hearsay because it contains statements purportedly made by Sean Rice,[2] Defendant's Dock Supervisor. Serraino states that Rice stated that it was true that Plaintiff was not yelling in the phone conversation with the investigator. Plaintiff argues that the statement by Rice is not hearsay because it qualifies under Federal Rule of Evidence 801(d)(2)(D) as a statement made by agent or servant of Defendant concerning a matter within the scope of his agency or employment. The Sixth Circuit has explained that "[t]here is a critical difference between making a statement while one is an employee and having the actual or implied authority to make such a statement on behalf of your employer." *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 928 (6th Cir. 1999). The test is whether the statement concerns a matter within the scope of the agency or employment. *Id.* The Court finds that as a supervisor, it would have been within Rice's scope of employment to report Plaintiff's behavior. Therefore, the statements attributed to Rice will not be stricken.

---

[2]The affidavit of Serraino refers to both a Sean Andrews and a Sean Rice. The Court assumes that the reference to Sean Andrews is a typographical error.

### 3. Affidavits of Mark Miller and Clifford Patterson

Defendant argues that several of the documents attached to these affidavits were not produced in discovery even thought they were responsive to Defendant's discovery requests. These documents appear to be warning letters written to other employees of Defendant. Plaintiff responds that he did not produce the documents in response to Defendant's discovery requests because he was not in possession of them at the time. Plaintiff argues that under Federal Rule of Civil Procedure Rule 26(e), he had no duty to supplement his responses. Plaintiff argues that he was forced to obtain these records from his union because Defendant refused to provide documents related to the discipline of other employees. The Court notes that these letters were written by Defendant, and presumably Defendant possesses copies of these letters. Since Defendant has not articulated any prejudice from Plaintiff's failure to produce these documents during discovery, the Court finds that the Affidavits of Mark Miller and Clifford Patterson should not be stricken.

### 4. Plaintiff's termination

Defendant argues that Plaintiff raises his termination in his affidavit, but has not sought leave to amend his Complaint to challenge his termination. Plaintiff responds that his Complaint alleged that the retaliation against him was ongoing, and he was not required to include termination as a new claim.

The Sixth Circuit has denied a plaintiff's attempt to inject a new claim at the summary judgment stage of litigation, even refusing to allow the plaintiff to amend a complaint under these circumstances. *See Wade v. Knoxville Util. Bd.*, 259 F.3d 452, 458 (6th Cir. 2001). The Sixth Circuit has explained that to allow a plaintiff to raise a new claim in response to a summary judgment motion would subject a defendant to unfair surprise. *Tucker v. Union*

*of Needletrades, Industrial and Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005). However, the Sixth Circuit has also stated that "[i]t is well-settled that the parties may constructively amend the complaint by agreeing, even implicitly, to litigate fully an issue not raised in the original pleadings. *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997), *citing* 6A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1493 at 19 (2d ed.1990). The Court finds that Defendant will not be subject to an unfair surprise if Plaintiff is permitted to argue that he was terminated in retaliation for his use of FMLA leave or for filing a workers compensation claim. Therefore, to the extent that Defendant's motion seeks to strike Plaintiff's allegations regarding his termination, the motion is denied.

**B.** **Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

**C.** **FMLA**

The FMLA prohibits an employer from retaliating against an employee for taking

leave under the FMLA. 29 U.S.C. § 2615; 29 C.F.R. § 825.220(c); *Chandler v. Specialty Tires of Am. (Tenn.), Inc.*, 283 F.3d 818, 825 (6th Cir. 2002). Plaintiff argues that his FMLA retaliation claim is based upon both direct and indirect evidence.

"Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor" in the adverse employment decision at issue. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 247 (1989). As direct evidence of retaliation, Plaintiff points to comments made by his supervisors which Plaintiff argues evidence an animus toward him based on his use of FMLA leave. Even if the Court were to construe these comments as being related to Plaintiff's use of FMLA leave, such ambiguous, isolated comments cannot serve as direct evidence of discrimination. *White v. Columbus Metropolitan Housing Authority*, 429 F.3d 232, 239 (6th Cir. 2005).

Plaintiff also argues that he can prove retaliation based upon indirect evidence. The Sixth Circuit has held that the *McDonnell-Douglas* burden-shifting framework should be applied to FMLA retaliation claims that are based upon indirect evidence. *Gibson v. City of Louisville*, 336 F.3d 511, 513 (6th Cir. 2003), *citing*, *Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309 (6th Cir. 2001). To establish a *prima facie* case of retaliation under the FMLA, a plaintiff must establish: (1) he availed himself of a protected right under the FMLA by notifying the Company of his intent to take leave, (2) he suffered an adverse employment action, and (3) there was a causal connection between the exercise of his rights under the FMLA and the adverse employment action. *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006); *Skrjanc*, 272 F.3d at 314. The employer then has the burden of articulating a legitimate nondiscriminatory reason for the adverse employment action. *Gibson*, 336 F.3d at 513. Finally, the plaintiff must show that this nondiscriminatory reason was in fact

pretextual and that unlawful discrimination was the real reason for the adverse action.  *Id.*

Defendant argues that Plaintiff cannot make out a *prima facie* case of retaliation because there is no causal connection between Plaintiff's FMLA leave and the adverse action.  Defendant points out that Plaintiff began to use FMLA leave in 1998, and testified that he used most of his FMLA leave every year since that time.

Plaintiff attempts to limit his claim, and argues that Defendant retaliated against him in 2004 and 2005 for exhausting his FMLA leave in 2002 and 2003.  Plaintiff argues this temporal proximity establishes a causal connection.  However, the Sixth Circuit generally requires a proximity of less than six months.  *Nguyen v. City of Cleveland*, 229 F.3d 559, 566-67 (6th Cir. 2000), *citing Parnell v. West*, 1997 WL 271751, *2-3 (6th Cir. 1997) (unpublished).  Because Plaintiff has not provided the Court with specific dates for his periods of FMLA leave, it is difficult to determine whether temporal proximity exists.  If the Court accepts Plaintiff's theory–that his use of FMLA leave was ongoing and Defendant's retaliation was ongoing–then the Court could reach the conclusion that Plaintiff has made out a *prima facie* case of retaliation under the FMLA.

Even if the Court were to reach this conclusion, the Court finds that Plaintiff cannot show that Defendant's reasons for his discipline and termination were pretext for retaliation.  Defendant explains that it had valid reasons for each instance of discipline and for Plaintiff's termination.  As to the incident with Misty Carroll, Defendant states that Plaintiff's three-day suspension was based upon Defendant's no tolerance policy regarding sexual harassment.  Defendant explains that Plaintiff admitted yelling and cussing at Carroll, and Carroll reported Plaintiff's behavior as being harassment.  As to the "cocksucker" statement, Defendant

explains that Plaintiff admitted the statement was made, and that he knew who made the statement. Defendant points out that Plaintiff only received a warning letter for his involvement in this incident. As to the one-day suspension for tardiness, Defendant explains that Plaintiff admitted that he was late. As to the three-day suspension in 2005 for a preventable accident, insubordination, and unexcused absence, Defendant explains that Plaintiff grieved this suspension, and a state hearing panel found in favor of Defendant. Defendant explains further that its Safety Department determined that Plaintiff's January 25, 2005 accident was preventable. As to telephone conversation with the workers compensation investigator, Defendant explains that Plaintiff's behavior constituted insubordination. Finally, as to Plaintiff's termination, Defendant explains that Plaintiff admitted that he failed to disclose the information on his CDL form, and Plaintiff's grievance of his termination was upheld at the state hearing level.

A plaintiff can establish pretext by showing that the defendant's proffered reason: (1) has no basis in fact; (2) did not actually motivate its decision; or (3) was insufficient in light of the particular adverse action. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

Plaintiff again relies on temporal proximity. "While the proximity in time between a request for FMLA-protected leave and discharge is sufficient evidence of a causal connection for purposes of establishing a *prima facie* case of retaliation, 'it is not alone sufficient to establish that an employer's legitimate, nondiscriminatory reason for discharge was a pretext.'" *Collins v. U.S. Playing Card Co.*, 2006 WL 3231309, *12 (S.D.Ohio Nov. 6, 2006) (slip. op.), *citing Heady v. United States Enrichment Corp.*, 2005 WL 1950793, *4 (6th Cir. 2005) (unpublished). Furthermore, "[e]vidence that the employer had been

concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity." *Smith v. Allen Health Sys.*, 302 F.3d 827, 834 (8th Cir. 2002). The Court notes that Plaintiff has a history of discipline, dating back to 1989, based on various infractions, including accidents, loud and abusive behavior towards a supervisor, absenteeism, and tardiness. These incidents occurred before 2002, when Plaintiff claims his relevant FMLA leave began.

Plaintiff also attacks Defendant's proffered reasons as having no basis in fact. Plaintiff argues that the shouting match between himself and Carroll did not constitute "sexual harassment" under Defendant's policy. Next, Plaintiff argues that Defendant did not know who used the word "cocksucker," but charged Plaintiff with insubordinate behavior. Third, Plaintiff argues that in making the determination that the 2005 accident was preventable, Defendant did not solicit Plaintiff's version of the events, but only relied upon the representations of the motorist's insurance carrier. Fourth, Plaintiff argues that it was the investigator who was yelling and screaming during the telephone conversation, not Plaintiff, and therefore the insubordination charge is unfounded. Finally, Plaintiff argues that there is no evidence that his medications affected his driving or exposed Defendant to unnecessary liability.

The Sixth Circuit has explained that a plaintiff must allege more than a dispute over the facts upon which his discharge was based. *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001). Instead, a plaintiff must put forth evidence which demonstrates that the employer did not "honestly believe" in the proffered non-discriminatory reason for its adverse employment action. *Id.* In order to determine whether the defendant had an "honest belief," a court must consider whether the employer can establish its "reasonable reliance" on the

particularized facts that were before it at the time the decision was made. *Id.* In *Smith v. Chrysler*, the Sixth Circuit noted that:

> In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.

55 F.3d 799, 807 (6th Cir. 1998). This Court must not second guess the business judgment of the employer, but simply evaluate "whether the employer gave an honest explanation of its behavior." *Hedrick v. W. Res. Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004).

The Court finds that Plaintiff has done little more than allege a dispute over the facts upon which his discipline and discharge were based. Plaintiff has not set forth evidence which demonstrates that Defendant did not "honestly believe" in the proffered non-discriminatory reasons the Court has set forth above. The only exception is that Plaintiff questions Defendant's determination that his 2005 accident was preventable because Defendant did not solicit Plaintiff's version of the events. However, it is not for this Court to require that Defendant's investigation leave "no stone unturned." As Plaintiff acknowledges, Defendant did rely on information from the motorist's insurance carrier. Based on the foregoing and the lack of evidence to the contrary, the Court concludes that Defendant made reasonably informed and considered decisions before disciplining Plaintiff or terminating Plaintiff's employment.

Finally, Plaintiff attacks Defendant's proffered reasons by attempting to compare himself to similarly-situated employees. A satisfactory showing that similarly situated employees, who do not belong to the protected class, were treated differently with regard to violation of a work rule can lend support to a plaintiff's pretext argument. *Morgan v. Hilti,*

*Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997); *see also Smith v. Leggett Wire Co.*, 220 F.3d 752, 762 (6th Cir. 2000) (plaintiff can prove pretext under the third *Manzer* prong by demonstrating that he was treated differently than similarly situated employees).

To be deemed "similarly situated" a plaintiff must establish that all relevant aspects of his employment situation were nearly identical to those he claims are similarly situated. *Ercegovich v. Good Year Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1992). Furthermore, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* at 352, quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

Plaintiff argues that his use of profane language in his argument with Carroll should be compared to an employee who "shot the finger" at another driver and an employee who engaged in a "tantrum" over his dispatch. Next, Plaintiff argues that there were other employees standing with him when someone used the word "cocksucker." Third, Plaintiff argues that other employees have had excessive absenteeism. For example, one employee had 29 absences in a 73-day period; another employee had 21 absences in a 73-day period; an employee had 15 absences in a 73-day period; and an employee had 15 absences in a nine-month period. Plaintiff states that these employees were not disciplined. Fourth, Plaintiff argues that his insubordination during the telephone conversation with the workers compensation investigator should be compared again with the employee who "shot the finger" and the employee who engaged in a "tantrum." Finally, Plaintiff states that in the past ten years, there were thirty-one of Defendant's employees who failed to fully complete

the DOT questionnaire, usually for failing to report a traffic citation.

The Court finds that Plaintiff has not established that these employees were similarly situated. There is no evidence that these employees dealt with the same supervisor or were subject to the same standards. In addition, while Plaintiff has presented evidence that these employees engaged in similar conduct, there is no evidence that there was an absence of differentiating or mitigating circumstances. Courts have long held that merely presenting evidence of non-protected-class employees who received less harsh employment actions cannot be sufficient for proving pretext in an intentional discrimination case. *Hilbert v. Ohio Dept. of Rehabilitation and Corrections*, 2005 WL 280527, *7 (6th Cir. 2005) (unpublished); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-480 (6th Cir.1989) (explaining that trial court no longer has duty to search entire record to establish that it is bereft of genuine issue of material fact).

Because Plaintiff cannot establish that Defendant's reasons for his discipline and termination were pretext for retaliation, Defendant is entitled to summary judgment on Plaintiff's retaliation claim under the FMLA.

**D.** **Workers Compensation**

Ohio Revised Code section 4123.90 provides: "No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer." However, an employee cannot bring a claim for a violation unless he or she first gives notice to the employer: "no action may be instituted or maintained unless the employer has received written notice of a claimed violation of this

paragraph within the ninety days immediately following the discharge, demotion, reassignment, or punitive action taken."

Plaintiff does not dispute that he failed to notify Defendant of his claim. Instead, Plaintiff argues that the filing of his Complaint is sufficient notice. The Court acknowledges that "[s]ections 4123.01 to 4123.94, inclusive, of the Revised Code shall be liberally construed in favor of employees and the dependents of deceased employees." Ohio Rev. Code § 4123.95. Furthermore, section 4123.90 does not dictate the form in which such notice must be presented to the employer. Ohio courts have construed the requirements of section 4123.90 liberally. *See Lamolinaro v. The Kroger Co.*, 1987 WL 32167, *2 (Ohio Ct. App. Dec. 29, 1987) (unreported) (employee's statement that she was discharged for attempting to process workers' compensation claim, contained within a written unfair labor practice charge, fulfilled notice requirement of § 4123.90); *Ira v. Price Bros. Co.*, 1993 WL 387104, *2 (Ohio App. 10 Dist.) (Ohio Ct. App.1993) (unreported) (employee's statement, contained within Ohio Bureau of Employment Security form in which he sought reconsideration of his discharge, fulfilled notice requirement of § 4123.90). However, even construing the notice requirement liberally, this Court cannot find that the filing of a complaint is sufficient notice. The plain language of section 4123.90 provides that "no action may be instituted or maintained unless the employer has received written notice."

The failure to give the employer written notice of a claimed violation of section 4123.90 within ninety days is a jurisdictional defect, and the action must be dismissed. *Miller v. Premier Indus. Corp.*, 737 N.E.2d 594, 602-603 (Ohio Ct. App. 2000); *Jakischa v. Central Parcel Express*, 2004 WL 1987131, *2 (6th Cir. Sept. 1, 2004) (unpublished). Accordingly, Defendant is entitled to summary judgement on Plaintiff's claim of retaliation

under Ohio Revised Code section 4123.90.

### E. Emotional Distress

Under Ohio law, " '[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.' " *Yeager v. Local Union 20*, 453 N.E.2d 666 (1983) (citing Restatement (Second) of Torts 77 § 46(1) (1965)). As this Court recognized in *White v. Honda of America Mfg., Inc.*, 191 F.Supp.2d 933, 955 (S.D. Ohio 2002), both the Ohio Supreme Court and the Sixth Circuit have adopted the standard set forth in comment d to Section 46 of the Second Restatement of Torts for determining whether the "extreme and outrageous" requirement has been met. Under this standard liability exists "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* Liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.*

There is nothing in Plaintiff's Complaint or evidence which meets the requirement of "extreme and outrageous" conduct. Plaintiff points to the disciplinary action taken against him, which he alleges was unfounded, and Plaintiff's allegations that Defendant has intimidated witnesses so that they change their story.[3] These allegations relate to Plaintiff's discrimination claims, and do not rise to the level of "extreme and outrageous conduct" without proof of something more. "If such were not true, then every discrimination claim

---

[3]The Court presumes that Plaintiff is referring to the incident involving Rice and Plaintiff's allegations that the terminal manager changed his story during the grievance proceedings for Plaintiff's termination.

would simultaneously become a cause of action for the intentional infliction of emotional distress." *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999). Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim of intentional infliction of emotional harm.

### III.  CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that:

1. Defendant's Motion to Strike (Doc. 20) is **GRANTED in PART and DENIED in PART**;

2. Defendant's Motion for Summary Judgment (Doc. 11) is **GRANTED**;

    a. Plaintiff's claim of retaliation in violation of the FMLA, 29 U.S.C. § 2615(a)(2) is DISMISSED WITH PREJUDICE;

    b. Plaintiff's claim of retaliation under Ohio Revised Code section 4123.90 is DISMISSED WITHOUT PREJUDICE;

    c. Plaintiff's claim of intentional infliction of emotional harm is DISMISSED WITH PREJUDICE; and

3. This matter shall be **CLOSED** and stricken from the Court's docket.

**IT IS SO ORDERED.**

    *S/Michael R. Barrett*
Michael R. Barrett, Judge
United States District Court